TAGGED OPINION



ORDERED in the Southern District of Florida on December 22, 2015.

Laurel M. Isicoff, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

_____

| | |
|---|---|
| IN RE: | CASE NO. 15-16365-BKC-LMI |
| RAUL CARDONA, | CHAPTER 7 |
| Debtor. | |
| _____/ | |
| AMERICAN AIRLINES FEDERAL CREDIT UNION TRUSTEE, | ADV. CASE NO. 15-1452-LMI |
| Plaintiff, | |
| vs. | |
| RAUL CARDONA, | |
| Defendant. | |
| _____/ | |

### ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter came before me on October 14, 2015 on cross-motions for summary judgment filed by the Plaintiff, American Airlines Federal Credit Union ("Credit Union") and by the Defendant/Debtor Raul Cardona ("Debtor").[1] Resolution of this adversary proceeding requires a determination of what is the meaning of "funds received as an educational benefit" in 11 U.S.C. §523(a)(8)(A)(ii) for the purposes of determining the non-dischargeability of the

---

[1] Motion for Summary Final Judgment By Plaintiff, American Airlines Federal Credit Union and Memorandum in Support (ECF #10), and Motion for Summary Final Judgment by Defendant Raul Cardona and Memorandum in Support (ECF #13).

Debtor's obligations to the Credit Union. For the reasons outlined below the Credit Union's Motion for Summary Judgment is granted and the Debtor's Motion for Summary Judgment is denied.

## STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues as to a material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When considering a summary judgment motion, I must view the evidence in the light most favorable to the non-moving party. *Kingsland v. City of Miami*, 382 F.3d 1220, 1225 (11th Cir. 2004). However, the mere existence of a factual dispute does not preclude entry of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. The non-moving party cannot solely rest on allegations to overcome a properly supported motion for summary judgment. *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996), *cert. denied*, 519 U.S. 1118 (1997). Instead, the nonmoving party should produce "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987).

## FACTS

In this adversary proceeding there are no material facts in dispute. The Debtor had several lines of credit with the Credit Union, each cross-collateralized. On July 26, 2013 the Debtor signed a LoanLiner Credit Agreement (the "Credit Agreement"). The Addendum executed with the Credit Agreement notes that the Subaccount Name is "Education Line of Credit."[2] The Credit Agreement had an initial variable interest rate of 10.75% and was secured

---

[2] The Debtor's Motion for Summary Judgment argued there was nothing in the Credit Agreement delineating it as an education loan; however, the Debtor is incorrect. The Addendum, which was signed on the same date as the

2

by any accounts the Debtor had with the Credit Union and cross-collateralized with all other loans[3] that the Debtor had with the Credit Union.

Although the Credit Agreement was called an Education Line of Credit, there was no requirement in the Credit Agreement that all or any advance be used for education purposes. Nevertheless, prior to bankruptcy the Debtor did take advances from the Education Line of Credit for expenses relating to education, including a $10,000 check made payable to Riviera Schools to pay tuition for his children, and seven checks totaling $3,730 to an entity called "Jackson Properties Inc." which the Debtor acknowledges was for rent for a child who is away at college.

The Debtor filed a chapter 7 bankruptcy case on April 8, 2015. The Credit Union timely filed a complaint seeking a determination that the Debtor's debt to the Credit Union in the amount of $14,892.31 is non-dischargeable pursuant to 11 U.S.C. §523(a)(8)(A)(ii). Section 523(a)(8)(A)(ii) is part of the student loan exception to the bankruptcy discharge[4] and states that a debt for "an obligation to repay funds received as an educational benefit, scholarship or stipend" is not dischargeable in the absence of undue hardship.

---

Credit Agreement, is expressly incorporated in, and attached to, the Credit Agreement; the applicable verbiage appears directly over the Debtor's signature on the Credit Agreement (ECF #1-1).
[3] Other than any loans secured by the Debtor's principal residence.
[4] Section 523(a)(8) provides:

> **(a)** A discharge under section 727…of this title does not discharge and individual debtor from any debt–
> . . .
> **(8)** unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for–
> **(A)(i)** an educational benefit overpayment or loan made, or guaranteed by a governmental unit, or made under any program funded in whole or in party by a governmental unit or nonprofit institution; or
> **(ii)** an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> **(B)** any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

11 U.S.C. §523(a)(8).

3

**ANALYSIS**

The term "educational benefit" is not defined in the Bankruptcy Code. Thus, courts have been left to review the circumstances surrounding the debt in question to determine whether it falls within or without the exception to discharge. The Debtor argues that the obligation to the Credit Union is not a student loan, and therefore, does not fall within this exception to discharge, because the Credit Agreement clearly is not in the nature of a student loan (it has a high interest rate, it was clearly based on the creditworthiness of the Debtor, and was secured by collateral). Moreover, the Credit Agreement is an undifferentiated unqualified loan, the proceeds of which could have been used for anything.[5]

The Credit Union argues that the Debtor obtained an "Education Line of Credit" and that he used funds from the line of credit for that purpose, thus, the debt is an "obligation to repay funds received as an educational benefit." In fact, the Credit Union argues, even if the Credit Agreement had not been called an "Education Line of Credit", because the advances were used to fund an educational benefit, the debt should be non-dischargeable.

Both the Bankruptcy Code and the case law regarding student loans and the bankruptcy discharge have gone through an evolution that has been criticized by many.[6] Nonetheless, Congress has spoken, and what started as an exception limited in time and scope now has an unlimited time horizon and applies to educational loans provided by or supported by government

---

[5] The Debtor also argued that, pursuant to 11 U.S.C. §523(a)(8)(B), the debt owing under the Credit Agreement is not subject to the student loan exception. However, the Credit Union is not seeking relief under section 523(a)(8)(B) and, thus, all of the Debtor's arguments with respect to section 523(a)(8)(B) are irrelevant.

[6] A review of the history of the Bankruptcy Code shows a "pattern of amendment [that] represents an obvious tendency on the part of Congress to tighten the gaps through which students could avoid loan repayment." *Kapinos v. Graduate Loan Ctr.*, 243 B.R. 271, 276 (W.D. Va. 2000). Many commentators have indicated that the changes to the Bankruptcy Code and the application of the "undue hardship" rule are unnecessarily harsh because most debtors are denied relief. *See* Kyle L. Grant, *Student Loans in Bankruptcy and the "Undue Hardship" Exception: Who Should Foot the Bill?*, 2011 B.Y.U. L. REV. 819, 827 (noting "debtors with other kinds of debt are not laden with the task of proving undue hardship."); Scott F. Norberg, *Symposium: Bankruptcy and Education: Bankruptcy and Higher Education Institutions*, 23 AM. BANKR. INST. L. REV. 385, 390-391 (2015) (discussing for-profit college closures leaving students without training or skills and burdening them with debts they cannot repay).

programs, not-for-profit lenders, and for- profit lenders. In fact, while the majority of section 523(a)(8)(A)(ii) predates the 2005 enactment of BAPCPA,[7] BAPCPA separated "obligation to repay funds received as an educational benefit" from the qualifier "loan made, insured or guaranteed by a governmental unit" and "program funded in whole or in part by a nonprofit institution".[8] Thus, while educational benefit is not defined in the Bankruptcy Code, it is clear that, as Congress has amended section 523(a)(8) over time, the meaning of educational benefit has become broader. *See Liberty Bay Credit Union v. Belforte (In re Belforte),* 2012 WL 4620987 (Bankr. D. Mass. 2012); *Rabbi Harry H. Epstein School, Inc. v. Goldstein (In re Goldstein)*, 2012 WL 7009707 (Bankr. N.D. Ga. 2012); *Sensient Technologies Corp. v. Baiocchi (In re Baiocchi)*, 389 B.R. 828 (Bankr. E.D. Wisc. 2008). Courts have found debts nondischargeable as an educational benefit even when the Debtor does not receive the education. *See Kidd v. Student Loan Xpress, Inc. (In re Kidd)*, 458 B.R. 612 (Bankr. N.D. Ga. 2011)(the debt was not dischargeable even though the helicopter training school closed before the Debtor finished her training); *Rabbi Harry H. Epstein School, Inc. v. Goldstein*, 2012 WL 7009707 (debt was incurred for schooling for the debtor's children).

Indeed, the *Belforte* case, cited by the Credit Union and the Debtor, is almost directly on point. Ms. Belforte, the debtor, had an unsecured line of credit with her credit union which was for an unspecified use. There was no oversight of Ms. Belforte's use of the funds. In 2008, several years after Ms. Belforte initially entered into her credit agreement with the creditor, Ms. Belforte requested an additional advance and an increase in the line of credit because she needed the money to pay for her children's tuition and books. The court rejected the debtor's argument

---

[7] Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) of 2005, Pub. L. No. 109-8, 119 Stat. 23 (codified as amended in various sections of 11 U.S.C. (2006)).
[8] Thus, cases cited by the Debtor that predate BAPCPA, which required that the funding for the educational benefit be provided by a government agency, or not for profit entity, and through a program, for example, *Santa Fe Medical Services, Inc. v. Segel*, 57 F.3d 342 (3d Cir. 1995), are no longer applicable.

that the funds were not received as an educational benefit because the funds were provided through a general unsecured line of credit, the credit union did not attempt to determine if she actually used the funds for the stated purpose, and the interest rate of 14% was more appropriate to a business purpose loan. Thus, the court held that a portion of the 2008 advance used for the tuition and books was excepted from discharge. Similarly, here, the funds advanced to or on behalf of the Debtor were for costs associated with his children's education, from a line of credit delineated for such use.

On the other hand, I do not agree that the changes to section 523(a)(8) are as far reaching as the Credit Union suggests. The Credit Union argues that even if the Credit Agreement had not been delineated as an education line of credit, the Debtor's use of the funds to pay for an educational benefit, *ipso facto* makes that portion of the debt non-dischargeable. This argument is far too broad. Courts have repeatedly upheld the principle that exceptions to discharge are to be strictly construed in favor of a debtor. *See United States v. Mitchell* (*In re Mitchell*), 633 F.3d 1419, 1327 (11th Cir. 2011); *United States v. Fegely* (*In re Fegely*), 118 F.3d 979, 983 (3d Cir. 1997); *Dalton v. IRS*, 77 F.3d 1297, 1301 (10th Cir. 1996). Thus, while the definition of educational benefit, and the student loans subject to exception to discharge, may have expanded, there are still limitations.

Where, such as in this case, the delineated purpose of the loan is for education, whether that purpose is indicated by the title of the loan, or in the application for the loan or extension of credit, and the use of the funds is consistent with the delineated purpose, I hold that those funds do constitute "funds received for an educational benefit" and, in the absence of a showing of undue hardship, the debt is not dischargeable.[9]

---

[9] My holding in this case should not be viewed as an endorsement of the current expanded and broad scope of section 523(a)(8); but any adjustment to that scope lies solely in the hands of the legislative branch.

Because undue hardship is not an issue in this case, I find summary judgment in favor of the Credit Union is appropriate. Accordingly, the Plaintiff's Motion for Summary Judgment is granted; the Debtor's Motion for Summary Judgment is denied.

The Plaintiff's counsel is directed to submit a final judgment consistent with this opinion.

# # #

Copies furnished to:
Chad Heckman, Esq.
Paul Contessa, Esq.

Attorney Heckman shall serve a copy of this Order upon all parties in interest and file a certificate of service with the Clerk of Court.